In the Matter of HOLT S. McKINNEY et al., Respondents. BUSH TERMINAL BUILDINGS COMPANY, Appellant.

First Department, November 25, 1952.

*Vermont Hatch* of counsel (*John M. Johnston* and *Malcolm J. Edgerton, Jr.,* with him on the brief; *White & Case,* attorneys), for appellant.

*Holt S. McKinney,* respondent in person, and for Clare R. McKinney, respondent.

CALLAHAN, J. This appeal presents two questions: (1) did the provisions of a certain plan for recapitalization of respondent's stock give rise to a right of appraisal under section 21 of the Stock Corporation Law; and (2) was an application by petitioners to the Supreme Court for the appraisal of their stock under section 21 presented in time.

If it be determined that the second question must be answered in the negative, it will not be necessary to answer the first question.

Section 38 of the Stock Corporation Law provides in subdivision 11 that if a certificate of amendment to effect the recapitalization of a stock corporation creates, limits, denies or abolishes the provisions or rights, as specified in paragraphs (b), (c) and (d) of that subdivision, a stockholder, if his notice was mailed twenty days prior to the meeting, " * * * may at any time prior to the vote authorizing such action — or if notice of the meeting to vote upon such action was not mailed to stockholders entitled to receive such notice at least twenty days prior to the taking of such vote, then within twenty days after the mailing of such notice — object to such action and demand payment for his stock, and thereupon such stockholder or the corporation shall have the right, subject to the conditions and provisions of section twenty-one, to have such stock appraised and paid for as provided in said section. Such objection and demand must be in writing and filed with the corporation ".

Subdivision 1 of section 21 of the Stock Corporation Law provides: " In the event that the stockholders of a corporation have taken action pursuant to * * * article four and if any stockholder has objected to such action and demanded payment for his stock as provided in * * * subdivision eleven of section thirty-eight, as the case may be, the corporation, within ten days after the last day on which a demand for payment might have been made, shall mail by registered mail to such objecting stockholder or deliver personally to him a written offer to pay for such stock in cash * * *.''

Subdivision 3 of section 21 further provides: " either such stockholder or the corporation may petition the supreme court, at any special term thereof held in the judicial district in which the principal office of the corporation is situated, to determine the value of such stock. Such petition shall be made on five days' notice and shall be made returnable in such court on the fiftieth day after the last day on which the demand of the objecting stockholder for payment might have been made, or, if the rules or practice of such court do not permit such petition to be made returnable on such fiftieth day, then it shall be made returnable on the first succeeding day permitted by such rules or practice.''

Our present inquiry is directed to the question as to whether petitions in the present proceeding were made returnable on or before the fiftieth day after the last day on which petitioners might have demanded payment for their stock.

Petitioners owned stock in respondent corporation as follows:

Holt S. McKinney, 335 shares of preferred and 138 shares of common, and Clare Roach McKinney, 645 shares of preferred and 64 shares of common.

Following is a chronological outline of steps taken with respect to the proposed recapitalization of respondent and petitioners' application for appraisal.

On or about October 17, 1951, respondent gave notice of a special meeting of stockholders to vote on a proposed plan of recapitalization of its stock in the event the plan should be approved by appropriate vote at a meeting to be held on November 26, 1951. The notice advised stockholders that if the plan should be so approved, it should contain a condition that it was not to become effective until, and unless, it should be authorized by the directors who were given discretion to act. The notice was accompanied by proxies and proxy statements.

In outline, the plan of reorganization contemplated a split of the $5 par common stock into 50 for one at ten cents a share. The $100 par 7% cumulative preferred stock on which unpaid dividends of $54.25 per share had accumulated were given the right, but not compelled to exchange each preferred share with accumulations for $100 principal of new mortgage income bonds, one share of $50 new cumulative convertible prior preferred and one share of common stock. There were certain provisions in the plan as to the voting rights of the stock, but for the purposes of our discussion we need not concern ourselves with them.

On November 6 and 7, 1951, these petitioners wrote letters objecting to the plan, demanding appraisal of their shares, and returned proxies voting against the plan.

On November 26, 1951, the special meeting of the stockholders was held. The plan was approved by more than a two-thirds vote of the stock entitled to vote thereon. The directors were authorized in their discretion to carry out the plan.

On December 10 and 11, 1951, the petitioners Holt S. McKinney and Clare Roach McKinney, respectively, submitted their stock for the notations provided for in subdivision 8 of section 21 of the Stock Corporation Law. On December 11 and 12, 1951, the shares were returned to said stockholders in the order named without notation and with statements that no right of appraisal existed.

On February 15, 1952, preferred stockholders were notified by the board of directors that the plan would become operative

if 80% of the preferred stock agreed to the exchange. Other advice was given concerning proceedings before the Securities and Exchange Commission. Deposit of the preferred stock was solicited.

On April 7, 1952, the board of directors approved the plan of recapitalization, and notices to that effect were sent on April 8, 1952.

On April 17 and 18, 1952, petitioners again submitted their respective shares for notation under subdivision 8 of section 21.

On May 1, 1952, petitioners served their petition for appraisal returnable May 6, 1952.

With these events in mind, we return to our inquiry as to the timeliness of the proceeding. This is dependent on what was the last day that stockholders could demand payment for their stock.

There is no dispute that notice of the meeting of November 26, 1951, at which the stockholders were to vote on the plan of recapitalization, was sent to all stockholders including petitioners in October, 1951, and at least twenty days before November 26th. The petitioners objected to the plan on November 6th and 7th and demanded appraisal, which was equivalent to demanding payment. Petitioners were required to demand payment for their stock " prior to the vote authorizing such action " (Stock Corporation Law, § 38, subd. 11). The words last quoted would appear to refer to the vote of the stockholders authorizing the recapitalization plan, and thus prior to the meeting held on November 26, 1951. If that is its meaning, it would be quite apparent that the petition, returnable on May 6, 1952, came too late. Fifty days from November 26, 1951, expired on January 15, 1952.

Petitioners say that their time to bring these proceedings did not expire on January 15, 1952, because the " vote authorizing such action " was the vote of the directors of April 7, 1952. We cannot agree with this construction of the statute. Section 21 of the Stock Corporation Law commences with the provision: " In the event that the stockholders of a corporation have taken action pursuant to * * * article four ". This evidences a statutory intent to refer to the vote of the stockholders as being the operative action referred to throughout subdivision 11 of section 38. Other provisions of the law with respect to the filing of certificates as to change of capitalization seem to bear out this construction (Stock Corporation Law, § 37, subd. 1, par. [c], cl. [2]).

This construction would seem to accord with reason as well as with the letter of the statute. It would seem desirable that a corporation and its stockholders know what burdens would have to be met with respect to payment for stock by agreement or appraisal, and what effect such demands might have upon the feasibility or wisdom of the proposed plan before voting on its approval or disapproval. Insofar as the present inquiry is concerned, the provision that gave the directors the right to act upon the proposed plan was clearly a condition subsequent to the operative approval on the part of the stockholders. It was in the nature of a veto power after the event. It could not be known when the directors might act and, therefore, the last date to demand payment would not be readily fixable, if that was to be the operative date. The fact that the plan provided that it was to be ineffective until the directors authorized same would seem to have no bearing on the issue of timeliness in view of the letter of the statute.

The reasons for reserving power of final action in the directors might be manifold. The necessity for proceedings before the Securities and Exchange Commission suggests itself as one reason for such reserved power. Such reservation of power was an integral part of the plan, and thus known to the stockholders when voting for approval or disapproval thereof. A different situation would exist as to voting for or against the plan without knowing how many stockholders had demanded payment for their stock.

The suggestion is made by petitioners that the failure to make any offer of payment delayed the running of the time to petition for appraisal and that, accordingly, a proceeding instituted on May 1, 1952, and returnable on May 6, 1952, was brought within fifty days after the last day on which demand of the objecting stockholder for payment might have been made. In view of the language of the statutes the failure to offer payment would not seem to extend the statutory period to petitioner for appraisal. References in subdivision 3 of section 21 to the corporation's failure to offer payment or the refusal of the stockholders to accept same appear to have no bearing on the period of limitation.

Whatever authority there is on the subject of the period of limitation would seem to be in accord with the views here expressed (*Matter of Thomas,* 259 App. Div. 843; *Standard Brewing Co.* v. *Peachey,* 202 Misc. 279; *Matter of Isaacs* [*Bohack Realty Corp.*], 198 Misc. 85).

We are required to dismiss the petition because it came too late. These proceedings are entirely statutory. The limitation is fixed by statute, and the time may not be extended by us (*Matter of Marcus* [*Macy & Co.*], 297 N. Y. 38).

Accordingly there is no need to discuss the further question as to the right of an appraisal on the merits.

We should reverse the order appealed from and dismiss the petition.

PECK, P. J., DORE and COHN, JJ., concur.

Order unanimously reversed, with $20 costs and disbursements to respondent-appellant and the petition dismissed. Settle order on notice.